Plaintiff and defendant were, prior to March 4, 1938, married and on that date they were divorced. The undisputed facts are that defendant requested plaintiff to divorce him and agreed to a settlement of their community affairs if she would do so. The agreement was reduced to writing on March 5, 1938 and is as follows:
"This contract and agreement entered into on this the 5th day of March, 1938, by and between Mrs. Juanita Upton Lyons, hereinafter known as Party of the First Part, and Louis Lyons, hereinafter known as Party of the Second Part, Witnesseth:
"Whereas the parties to this agreement were married on November 14, 1936 in Caddo Parish, Louisiana, and during the existence of said marriage acquired certain community property and incurred community debts;
"And whereas Party of the First Part obtained a judgment of absolute and final divorce, a vinculo matrimonii, from said Party of the Second Part on March 4, 1938 which judgment was rendered by the Honorable J.F. McInnis, Judge of the 26th Judicial District Court, Bossier Parish, Louisiana; and whereas it is the desire of said parties to effect an amicable agreement as to the division of said community property and effects;
"Now therefore, it is mutually understood and agreed that Party of the Second Part shall and does by these presents give *Page 317 
unto Party of the First Part that certain property described as being Lot 136 of the Evans Place Subdivision, Bossier City, Bossier Parish, Louisiana, and the West ten feet of Lot 135, which is next to and adjoining said Lot 136, all of which is also known as No. 1108 Delhi Street, Bossier City, Bossier Parish, Louisiana, together with all improvements thereon, and together with all the furniture and fixtures contained in the house situated on said property; Party of the First Part shall assume and does hereby assume all liens, mortgages and other encumbrances on said property, and relieves Party of the Second Part of all liability for any indebtedness that may be owed by the community and secured by said property;
"In furtherance of the above portion of this agreement, Party of the Second Part has executed in favor of Party of the First Part a cash deed to said property wherein Party of the First Part assumes liability for all liens, mortgages and encumbrances existing against said property;
"It is understood and agreed by and between the parties hereto that Party of the Second Part shall pay to Party of the First Part the sum of $415.00 on or before June 1, 1939, in evidence of which indebtedness he has given unto Party of the First Part his one certain promissory note bearing even date herewith, payable to Mrs. Juanita Upton Lyons, due on or before June 1, 1939, and bearing interest at the rate of 8% per annum from maturity until paid;
"It is further understood and agreed by and between the parties hereto that except for the indebtedness secured by the property above described and assumed by said Party of the First Part, said Party of the Second Part agrees to assume sole liability for all community debts of every nature whatsoever;
"It is further understood and agreed that Party of the First Part owned certain real estate located in the State of Texas, before having entered the marriage with Party of the Second Part and said Party of the Second Part acknowledges that said property in the State of Texas belongs to said Party of the First Part and Party of the Second Part hereby disclaims any interest whatever in said property located in the State of Texas and agrees to execute any instrument necessary to protect the title of said Party of the First Part in said property as against any claim on the part of said Party of the Second Part;
"That for and in consideration of the above, Party of the First Part hereby relinquishes and renounces all claims, rights and equities whatsoever to any other property or properties that belong, or may belong, in any way whatsoever to the community of acquets and gains.
"Thus done and signed before the undersigned Notary Public and the two competent witnesses on this the 5th day of March, 1938."
The transfer of the property was made in accordance with the above agreement and the note was executed. When the note was due it was not paid and plaintiff instituted the present suit.
The lower court in a written opinion set out the defense made and correctly disposed of the issues, which opinion is as follows:
"This is a suit on a note for $415.00, dated March 5, 1938, due 15 months after date with 8% interest after maturity and 10% attorney's fees.
"Defendant denies the allegations of the petition and sets up as a defense that there was no consideration for the note and that it was obtained through fraud, error, subterfuge, misrepresentation and deceit. He alleges that plaintiff in this suit obtained a judgment of divorce against him on March 4, 1938 and that the note was given in connection with an agreed oral compromise and contract of partition of community property entered into March 5, 1938. He says the oral agreement was the consideration of the note and was that plaintiff would not sell the Bossier City property prior to the full payment of the mortgage indebtedness, unless the conveyance was made to defendant; and that he was to pay no further consideration other than the note sued on, but that he is informed and believes that prior to the granting of the divorce plaintiff had agreed to sell the property to Dr. and Mrs. G.B. Tait and that prior to the oral agreement of partition had actually executed a conveyance of the property for a consideration of $1000.00 and the assumption of the mortgages against the property, and had requested Dr. and Mrs. Tait not to tell defendant of the sale until after she had left the State.
"In reconvention he asks for judgment for one-half of $1,380.00, the amount plaintiff received for the property, and one-half the furniture which he says is worth $2,000.00, or a judgment for $1,000.00. He also claims that he is the owner of one-half *Page 318 
interest in house and lot situated at 4322 Leland Street, Houston, Texas, which he now claims is community property. Though not necessary to do so, plaintiff filed an answer to the reconventional demand denying all the allegations of same. On these issues the case went to trial.
"Plaintiff offered the note and the contract in evidence. The contract appears to be a full settlement of the community and, according to the contract, a note for $415.00 was given. However, the contract says the note was to be due June 1, 1939, whereas the note is due 15 months after date, which would make it fall due June 5, 1939, instead of June 1st. Plaintiff explains this. She says defendant refused to sign the note for $415.00 that her attorney had prepared and went in company with Dr. Tait to the refinery where he was employed and got the blank note and filled it out himself and signed it, and this is admitted by defendant; but he has another explanation that will be referred to later.
"The contract they signed provides that plaintiff is to have the house and lot at 1108 Delhi Street, Bossier City, and all the furniture and fixtures in the house and she assumed to pay all the encumbrances on the property, which were a first mortgage to the Building Loan Association, the amount of which is not shown by the record, but the payments were $30.00 a month, so the loan must have been originally around $3,000.00, and $1,000.00, second mortgage held by the defendant's brother in Alabama, which Dr. Tait paid, and in carrying out this part of the contract, defendant executed a deed to plaintiff for the property. The contract provides that defendant had given plaintiff the note for $415.00 and assumed all community debts, except the encumbrances on the Bossier City property which plaintiff assumed. The contract also provides and recites that plaintiff owned certain real estate in Texas before the marriage and acknowledges that it belongs to the wife and disclaims any interest in it and agrees to execute any instrument necessary to protect her title to it. The plaintiff relinquished all claim to any and all other community property.
"Plaintiff testified that defendant owed her $235.00 balance on a $300.00 loan she had made him and that he agreed to pay her $30.00 a month, in lieu of alimony, and that this $180.00 added to the $235.00 he owed her made up the sum of $415.00 for which the note was given.
"Defendant denies this and says that after the contract of settlement was signed, he and the plaintiff had another agreement which was oral, doing away with the written one, and that he gave her the note for $415.00 in consideration of an oral agreement on her part that she would not sell the Bossier City property to anyone else except him unless all the encumbrances had been paid off in full. He says he agreed to make six $30.00 payments monthly to the Building Loan Association on the Bossier City property, at which time the Houston property would be paid out, but that plaintiff wanted to handle the money herself and for that reason he gave her the note, but that accounts for only $180.00 and the balance of $235.00 is not accounted for by the defendant. Objection was made to the admissibility of oral testimony concerning real property, which objection we think is good, and it is now sustained.
"On the whole, the claim of defendant that the note was without consideration or was obtained by fraud, error and misrepresentation is not made out. Neither has he made out any of his claims in reconvention.
"It is provided in the written contract that he is to give her a note for $415.00. He wrote out the note himself and gave it to her, and it recites that it is for value received. It appears that plaintiff did ask Dr. Tait and his wife not to tell defendant about buying the property until after she left the State, but when Dr. Tait presented the Building Loan book, he readily signed the transfer. Of course, being a licensed attorney, he knew he could not enforce any oral agreement with reference to the real estate.
"For the reasons assigned, there will be judgment for the plaintiff as prayed for and rejecting the reconventional demands of the defendant."
The conclusions of the lower court are correct and the judgment is therefore affirmed, with costs. *Page 319